UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

EMMANUEL JAMES,

Defendant.

Case No. 20-CR-89-2-JPS

**ORDER**

On June 16, 2020, the Government filed a five-count indictment charging Antonio Holt ("Holt") and Emmanuel James ("James") with drug trafficking. (Docket #15). Specifically, James was charged with possessing with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (C) and possessing a gun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). On November 24, 2020, James filed a motion to suppress the physical evidence in this case. (Docket #52). On January 11, 2021, Magistrate Judge Stephen C. Dries issued a Report and Recommendation (the "R&R") that denied the motion to suppress. (Docket #68). James filed objections to the R&R, which are now fully briefed. For the reasons explained below, the R&R is adopted in part and overruled in part, and the motion to suppress shall be denied.

1.   **LEGAL STANDARD**

When reviewing a magistrate judge's recommendation, the Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. The

Court's review encompasses both the magistrate judge's legal analysis and factual findings. *Id.*; *see also* Fed. R. Crim. P. 59(b).

## 2.   FACTUAL BACKGROUND

James objects to Magistrate Judge Dries's characterization of the facts, so the Court will review those facts *de novo*. The Court derives the following facts from the affidavit of Agent Nathan Peskie ("Peskie") which he wrote in support of the search warrant for James's home. Judge James G. Pouros of the Washington County Circuit Court issued the warrant on May 11, 2020 at 9:12 p.m. It permitted a search of XXXX N. 36th Street ("the 36th Street residence") as well as any vehicle parked on the premises or behind the residence, for cocaine, U.S. currency, and any other piece of evidence related to the distribution of controlled substances. (Docket #57-2 at 1).

As Magistrate Judge Dries observed, "the affidavit concentrates on Holt, rather than James, and . . . James' [sic] name does not appear until paragraph 44 of the 53-paragraph affidavit." (Docket #68 at 10). Indeed, "James'[s] involvement in drug-trafficking activity is not readily apparent from a cursory review of the affidavit." (*Id.*) The affidavit begins with a careful probe of Holt's crack-cocaine dealing enterprise in Slinger, Wisconsin, which was surveilled over a two-year period. The affidavit catalogues a cast of characters, including an initial informant, three separate confidential informants, various anonymous tipsters, and an undercover officer who conducted or oversaw several controlled buys from Holt's ostensible partner, Alexander Nuoffer ("Nuoffer"). The affidavit describes the GPS-monitored activities of Holt and Nuoffer, which revealed that Holt made several trips down to Milwaukee. (*Id.* ¶ 13). The affidavit also

discusses the pen registry information[1] on Holt and Nuoffer's phones, which showed extensive communication between the two men.

Starting in November 2019, the officers began to focus on Holt's activities in Milwaukee, hoping to identify Holt's cocaine supplier. Police "noted that Holt frequented two areas on the north side of Milwaukee when he made trips to Milwaukee." (Docket #57-1 ¶ 26). The areas are not defined. There were "two (2) numbers of interest that were consistently contacted on dates when Holt traveled to Milwaukee." (*Id.*) The officers obtained administrative subpoenas for these numbers, including one that ended in 8687 ("the 8687-number"). The affidavit does not discuss the results of the subpoenas.

On November 25, 2019, "Holt traveled to the area of N[.] 36th Street and W[.] Toronto Street consistent with previous trips." (*Id.* ¶ 29). The affidavit does not state when these previous trips occurred, but the Court infers that this intersection is one of the "frequented two areas on the north side of Milwaukee." (*Id.* ¶ 26). On December 11, 2019, "Peskie conducted physical surveillance of the area of N. 36th Street and W. Toronto Street in the City of Milwaukee" upon noticing, via GPS, that Holt was traveling towards Milwaukee. (*Id.* ¶ 30). At around 2:05 on December 11, Peskie saw Holt turn onto West Toronto Street and park his car. At 2:06 p.m.,

> a black Chevrolet Suburban pulled up and parked directly behind Holt's vehicle. The SUV was driven by a black male, your affiant was able to reposition and observed both the driver and a Wisconsin registration of AEB8926.

---

[1] A "pen register" records a phone number's incoming and outgoing contacts.

(*Id.* ¶ 30(B)). There is no other description of the driver. Holt got out of his car and into the front passenger's seat of the Chevrolet Suburban. He stayed there until 2:13 p.m., at which point both cars left the scene, and Holt drove back to Slinger. Based on his experience as a police officer, Peskie determined that this meeting was a "drug transaction." (*Id.* ¶ 30(D)). "A query of the registration on the black SUV returned on a 2005 Chevrolet K1500 Suburban to Ej's [sic] Services of 5019 N[.] Hopkins Street in Milwaukee." (*Id.* ¶ 30(C)). The affidavit contains no information about EJ's Services.

After observing this "short meeting," Peskie obtained "a chronological report of Holt's cell phone activity from 1:30PM-2:15PM [sic]." (*Id.* ¶ 30(D)). This report demonstrated that "Holt only made one (1) outgoing text message and one (1) outgoing voice call in the specified time period . . .to [the 8687-number], and there was one (1) incoming text also from that number." (*Id.*) The affidavit does not contain precise time stamps, the Court infers that the 8687-number may have been associated with the man in the Chevrolet Suburban.

The next day, on December 12, 2019, Peskie "located the black Suburban . . .bearing Wisconsin registration AEB8926 parked in the street in front of [the 36th Street Residence], an address which Holt's vehicle had stopped at during previous trips to the area." (*Id.* ¶ 31). There is some confusion as to whether this address is the second "frequented area on the north side of Milwaukee," (*id.* ¶ 26) or whether this is an extension of the area encompassing the intersection of 36th Street and West Toronto Street, which is .3 miles away. There was another car in the driveway, which was also registered to EJ's Services in Milwaukee. Again, the affidavit does not provide any information about EJ's Services.

Page 4 of 14
Case 2:20-cr-00089-JPS-SCD   Filed 08/31/21   Page 4 of 14   Document 94

In Slinger, the investigation of Holt and Nuoffer continued apace. Investigators conducted three more controlled buys. For the first four months of 2020, it appears that Holt did not travel to Milwaukee. Curiously, the affidavit states "for approximately four weeks, the GPS installed on Holt's [car] did not go to the area of Emmanuel James' [sic] residence." (*Id.* ¶ 44). This is the first time James's name is mentioned in the affidavit. On first reading, it is unclear who James is, how Peskie knows where he lives, or what relation James's residence has to the locations previously mentioned in the affidavit. The affidavit continues, "as of May 5, 2020, Holt's vehicle traveled to the area of James' [sic] residence on both the 5th, 6th, and 10th of May." (*Id.*)

On May 11, 2020, Holt left Slinger and drove down "to the area of Emmanuel James [sic] residence at XXXX N[.] 36th Street in the City of Milwaukee, Milwaukee County Wisconsin and was only at the address for approximately thirteen (13) minutes." (*Id.* ¶ 45). After this brief stop, Holt's car travelled to the City of Rockford, Illinois, where it parked in an alley for about one hour and thirty-eight minutes. Next, the car stopped briefly at Burger King and Subway, and then again at a gas station, before leaving Rockford and going back to Wisconsin. (*Id.* ¶ 45).

Peskie coordinated a stop of Holt's car on I-43 in Milwaukee County. A drug detection dog alerted on the vehicle, but the officers only found two handguns and "a large sum of U.S. Currency banded in rubber bands in a plastic shopping bag" in the car. (*Id.* ¶ 46). Holt was the driver; James was his passenger. After the stop, Peskie stated that he "believe[d] that Emmanuel James utilizes XXXX N 36th Street, in the City of Milwaukee, Milwaukee County, to store, repackage, and distribute cocaine." (*Id.* ¶ 49). Peskie also stated that "there are multiple vehicles parked at the residence

at XXXX N 36th Street in the City of Milwaukee, Milwaukee County, Wisconsin, which include a black Chevrolet Suburban parked in the driveway that is typically operated by Emmanuel James[.]" (*Id.* ¶ 51). The affidavit contains no information regarding any surveillance of James, his putative car, or the residence on 36th Street.

Officers executed the search warrant and seized a veritable trove of handguns, drugs, and other paraphernalia, as well as several documents showing that James did live at the residence on 36th Street. No cocaine was found.

3. **ANALYSIS**

James's primary objection to the R&R is that it "accepts as established facts allegations and officer beliefs for which the Government has presented no evidence." (Docket #72) (edited for clarity). James argues that there are no facts in the affidavits to establish probable cause to search James's home for drugs and guns. The Government, on the other hand, asks the Court to adopt Magistrate Judge Dries's framing of the issue, which found probable cause based on a totality of inferences: "(1) James'[s] connection with Holt, a known drug dealer; (2) frequent trips made by Holt to James'[s] residence and the area close by; (3) James'[s] likely involvement in the December 11, 2019 meeting with Holt, which had the markings of a drug transaction; and (4) James'[s] presence in Holt's vehicle during the May 11, 2020 traffic stop in which the police found guns and likely drug money." (Docket #68 at 15). As the Court will explain below, there was not probable cause to search the 36th Street Residence. However, the defense

has not rebutted the presumption that the warrant was applied for in good faith; therefore, the motion to suppress must be denied.[2]

### 3.1 Probable Cause

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It requires searches to be conducted pursuant to a warrant, issued upon probable cause that a crime occurred. *Id.* The "central teaching" of the Supreme Court's "decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 170, 176 (1949)). These "probabilities" are non-technical; "they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Brinegar*, 338 U.S. at 175).

Nevertheless, an affidavit used to support probable cause must contain "[s]ufficient information . . .to determine probable cause." *Id.* While "issuing judges may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense," there must be facts that allow these inferences. *United States v. Zamudio*, 909 F.3d 172, 175–76 (7th Cir. 2018). Similarly, while issuing judicial officers are entitled to "great deference" in their probable-cause determinations, their "action cannot be a mere ratification of the bare conclusions of others."

---

[2]The parties also contested whether this warrant was an "illegal general warrant" and whether James had standing to contest the search. James has not objected to the magistrate's conclusion that the warrant was sufficiently particularized, and the Government does not object to the magistrate's conclusion that James had standing to challenge the search. Accordingly, the Court leaves these conclusions undisturbed.

*Gates*, 462 U.S. at 239. Thus, while probable cause "does not require direct evidence linking a crime to a particular place," there must be enough facts in the affidavit to suggest a "'fair probability' that evidence of a crime would be found at [the] home." *Zamudio*, 909 F.3d at 175–76 (citations and quotations omitted). As one court put it, a reviewing judge must have "some basis of evaluating the reliability of the information in the affidavit," otherwise, that reviewing judge is "acting on faith alone, and not facts." *United States v. McNeal*, 82 F. Supp. 2d 945, 953–54, 960 (S.D. Ind. 2000) (concluding that a detective's "conclusory opinion" was insufficient to provide probable cause to search a residence, and explaining that there needed to be some factual bases for the judge's inferences).

The parties may have noted that, in Section 2, above, the Court drew several reasonable inferences based on the facts. *Zamudio*, 909 F.3d at 175. First, that the owner of the 8687-number was involved in the drug trade; second, that the man Holt met with in the black Chevrolet Suburban was the owner of the 8687-number;[3] third, that the meeting on December 11 had something to do with the drug trade, be it a drug transaction, a payment, or a logistical meeting.[4] In the R&R, Magistrate Judge Dries went a step further, and concluded that "[s]ince Emmanuel James' [sic] initials are 'E.J.,'

---

[3]Precise time stamps might strengthen or weaken this inference—for example, if the contacts with the 8687-number occurred *during* the meeting, it would be less likely that the number belonged to the man in the black Chevrolet Suburban. On the other hand, if the contacts occurred in the minutes leading up to the meeting or in the minutes after it ended, this would strengthen the inference. The affidavit does not include this information.

[4]Peskie did not witness any other indicia of a drug trade such as, for example, the swapping of cash for a package, the counting of money, or Holt entering or exiting the vehicle carrying a package.

the judicial officer would have reasonably concluded that Emmanuel James was the 'E.J.' in question *and that he was driving the Suburban*." (Docket #68 at 11) (emphasis added). But a judge is "not permitted to presume missing facts or links which would enable him to draw necessary inferences," *McNeal*, 82 F. Supp. 2d at 955, and here, there are no facts suggesting that James was the driver of the Suburban during that critical day in December—or, really, at any other time. And although Magistrate Judge Dries buttresses his conclusion by explaining, "in case there was any doubt . . . the affidavit later indicates that the Suburban was 'typically operated by Emmanuel James,'" (Docket # 68 at 11), this, too, is an inference without a factual basis. When did the officers—or anyone, for that matter—see James operate the car?

Although Peskie witnessed the December meeting and was at close enough range to obtain the license plate number of the black Chevrolet Suburban, he did not provide *any* description of the man in the Chevrolet Suburban, aside from the fact that the man was Black. There is no build, no age, no identifying article of clothing—nothing. Thus, the magistrate judge's conclusion that "[g]iven that James was the other party to the December 11 drug transaction, it is equally reasonable to believe that he was using the 8687 phone number to coordinate the meeting with Holt" is completely spurious. (*Id.* at 12). There are no facts in the affidavit to indicate that James was the other party to the December 11 transaction. In other words, there is no "given." The premise is flawed. The inference drawn from this flawed premise (i.e., that James was using the 8687-number) is unchecked speculation.

Moreover, aside from the fact that the Chevrolet Suburban was registered to a company bearing James's initials and was, on two occasions,

seen parked outside of the 36th Street Residence, where James might have been picked up from on May 11 (recall, Holt made five stops before he was seized with James in his car), there are no other details connecting James to the Chevrolet Suburban (or any of the other cars parked at the residence), and no facts suggesting that he lived at the residence. Was James affiliated with EJ's Services? Did anyone ever see James visit the 36th Street Residence? Again, the affidavit invites unchecked speculation.

The Government argues that Holt had previously visited "the area" of the 36th Street Residence on his trips to Milwaukee earlier in May, which suggest ongoing drug activities. The Court notes that "the area" is undefined, and it is not clear whether Holt simply drove through "the area" or made a series of brief stops which, depending on the circumstances, might be construed as drug transactions. In any case, there were no drug transactions observed; no phone numbers associated with these visits (much less linked to James); no other sightings of the black Chevrolet Suburban during Holt's trips to "the area" until the day of the arrest; no sign of James.

The Seventh Circuit has found it "doubtful" that officers had probable cause to search a defendant's home for evidence of a robbery when "a witness saw the robber run from the bank to a car . . . and the license plate number of the car was registered to [the residence]" but the affidavit "did not even state that the car was at the house" to be searched. *United States v. Dickerson*, 975 F.2d 1245, 1249–50 (7th Cir. 1992) ("[T]he affidavit provided the issuing magistrate no facts to establish that evidence of a crime could be found inside the residence[.]"). Similarly, the Seventh Circuit has affirmed a district court's conclusion that "the totality of circumstances . . . did not establish a substantial basis for concluding that

probable cause existed" to search a home when the search warrant affidavit failed to show "how the police knew that the [residence] was truly one of [Defendant's] addresses." *United States v. Brown*, 832 F.2d 991, 994 (7th Cir. 1987).

Here, the insufficiency is much greater: the affidavit does not contain a single fact to explain why the officers thought the 36th Street Residence was James's home. Moreover, aside from James's presence in Holt's car, there is not a single fact to connect him to any drug transaction. The officers did not find James in the presence of drugs; the 8687-number, which was presumed to be the contact number of the drug dealer, was not associated with James; James was not identified as the man driving the Chevrolet Suburban on December 11; and James was never seen visiting the 36th Street Residence or driving the Chevrolet Suburban at any other time. It would be easy to give credence to the Government's unsupported conclusions in service of a particular outcome, but this is not what the Fourth Amendment demands. Probable cause is fluid, not vaporous—it requires articulable facts, not baseless inferences. On the face of the affidavit, there is not a fair probability that the 36th Street Residence would contain evidence of a drug dealing enterprise.

### 3.2 Good Faith Exception

"[S]uppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause." *United States v. Adams*, 934 F.3d 720, 726 (7th Cir. 2019) (quoting *United States v. Watts*, 535 F.3d 650, 656–57 (7th Cir. 2008)). Often, "[a]n officer's decision to obtain a warrant is prima facie evidence that the officer was acting in good faith." *Id.* This presumption may be rebutted in four

ways. *United States v. Leon*, 468 U.S. 897, 923 (1984). First, if the magistrate judge was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Second, if the magistrate judge abdicates the role of a neutral and detached judicial officer and becomes "an adjunct law enforcement officer." *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 327 (1979) (reversing a denial of a motion to suppress where the magistrate actively participated in searching and seizing evidence from a premise). Third, if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975)). Finally, if the warrant was "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid." *Id.* Given these limited exceptions, "[o]vercoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination." *Adams*, 934 F.3d at 726 (quoting *United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019)).

Here, James asks the Court to find that Peskie acted with reckless disregard for the truth. The Court cannot do so. The affidavit does not contain "false information" that the affiant "would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923. Indeed, it appears the affidavit contained true information; the mystery lies in how the affiant knew the information to be true. Similarly, there is no evidence that the reviewing judge abdicated the role of a neutral and detached officer—only that he was, perhaps, swayed by a lengthy and conclusory affidavit. Third, although the affidavit is not well-reasoned, it is not "so

lacking in indicia of probable case as to render official belief in its existence entirely unreasonable." *Id.* There are pages upon pages suggesting that Holt was involved in drug dealing, and there are inferences upon inferences that, when read quickly, seem to tie James to Holt's nefarious activity. As discussed above, these inferences are totally unsupported—but this does not render the officer's belief in the existence of the warrant unreasonable. Finally, the warrant was not "so facially deficient" as to be presumptively invalid—indeed, the warrant identifies the place to be searched and the items to be seized, and the affidavit in support of it spans 53 paragraphs and 14 pages. In this particular case, the fact that the affidavit's conclusory statements amount to a rhetorical house of mirrors does not necessarily rob an officer of good faith in relying on the warrant.

It is clear from the length and detail of this particular affidavit that Peskie endeavored to provide details sufficient to support his search warrant. His conclusions were entirely unsubstantiated—he failed to connect the dots between James, the drug transaction, and the 36th Street Residence. But this failure does not compel a finding that law enforcement obtained or executed the warrant in bad faith. *See United States v. Matthews*, 2021 WL 3821849, at *5–6 (7th Cir. Aug. 27, 2021). Given Peske's detailed affidavit, together with the facts that he promptly gave it to a reviewing judge for consideration, and that two different judicial officers apparently did not see the factual deficiencies in the affidavit, the Court finds that the good faith exception applies. The motion to suppress must be denied.

### 4. CONCLUSION

Peskie's hunch about James was correct. But it seems that the hunch was not based on much more than a feeling and a few jumped-to conclusions communicated in a sprawling affidavit. This Court has said it

before and will say it again: searches must be constitutional. If the Constitution does not apply to everybody in equal measure, it then becomes meaningless.

Accordingly,

**IT IS ORDERED** that Defendant Emmanuel James's objections to Magistrate Judge Stephen C. Dries's Report and Recommendation (Docket #72) be and the same are hereby **OVERRULED in part**;

**IT IS FURTHER ORDERED** that Magistrate Judge Stephen C. Dries's Report and Recommendation (Docket #68) be and the same is hereby **ADOPTED in part and OVERRULED in part** as stated in the terms of this Order; and

**IT IS FURTHER ORDERED** that Defendant Emmanuel James's motion to suppress (Docket #52) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2021.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge